May I reserve two minutes at the end of my presentation for rebuttal? You may. Thank you. May it please the court, my name is Sven Wieberg. I'm here for the defendant appellate Peter Apicelli. No one at trial, there wasn't a single witness at trial who identified Peter Apicelli as being the person in the videos that were taken. These videos were of really questionable quality as it came out at trial, and in fact the law enforcement personnel who actually testified about those videos conceded that they couldn't identify Peter Apicelli from the videos. Well, did anyone else live in the house where they found the clothes? Well, Your Honor, there was some information that the government had that the defendant's daughter was a resident at certain times, but the point is there was no evidence introduced at trial that there was any surveillance or any other source to say that nobody else was in that house or on that property. Now remember, the video shows certain clothes and certain backpacks, and they found those in the house where he lived. That was disputed. That was disputed, but apparently the jury couldn't believe what I just said. Right, but it was practically stipulated. The government was asked by the court when problems came up at trial about this very issue, about, well, you don't have the person who supposedly identified because this police agent, town employee, sometimes informant, who was the hunter who was told you can't come on the land anymore except for this one little spot. That person, in retaliation, is our position, indicated to the police, I think there's some growing going on involving Mr. Apicelli. Now, we didn't know at the beginning because of the discovery issue and the dribs and drabs that came out that, in fact, the informant, this public-spirited citizen who had cooperated with police before and had these motives to retaliate and fabricate, that he actually couldn't lead them directly to what he said was a grove somewhere near the property. And remember, there's nothing in the trial where it was established that the grove was actually on property leased by Mr. Apicelli. The description was, I believe, somewhere near 200 yards away, just into the woods behind an old abandoned orchard. And that's where these videos were taken, but the search was led by this very person. That wasn't in the affidavit that this person was the one leading the search. It wasn't in the affidavit that, in fact, they didn't know where they were going, the police individuals who were on the search party, and he himself was having trouble finding something. Nobody in any testimony said, yes, I saw Peter Apicelli growing. But there's no requirement, either for the issuance of the search warrant or for the conviction, that there be eyewitness testimony. We have held convictions time after time based on circumstantial evidence, and the circumstantial evidence here is rather strong. Well, I disagree, Your Honor, and here's why. You disagree with what? With the premise that a conviction can be based on circumstantial evidence? Absolutely not, but there's a different way to handle circumstantial evidence. And here, the circumstantial evidence, where there is absolutely no identification, direct identification, that's Peter Apicelli growing or tending those plants. Except he's the resident of the closest home. His home is found on the search to contain clothing, as Judge Troy had pointed out, that is a match for the clothing that the person seen on the video was wearing. The search turns on other marijuana-related paraphernalia and some marijuana itself. I mean, there's plenty of evidence here. But Judge Troy didn't have to draw the inference that the government wanted him to. Well, in fact, the government said they weren't going to argue that. They weren't going to argue. They said, we're not going to say. They specifically said that during trial in response to the trial court's inquiry, when there was that issue where they were actually trying to introduce the out-of-court action by Mr. Bain. You can see in the record where they talk about, OK, what did you do next? And well, we were attempting to have an identification of the person in the video. And then Bain's name comes out. In response to that and other issues relating to the identification, the prosecutors actually said, no, we are not going to argue that that is Peter Apicelli in the video. But that's exactly what they did. No, no. But they never committed that if they said they weren't going to argue that you could tell from the video that it was Peter Apicelli. I'd ask you to take a look at those sections and see what they said. And it doesn't matter what the government said they were going to argue. What matters here is what inferences a reasonable jury can draw from this massive evidence. And it seems to me that the evidence here, you may have some technical objections, things like speedy trial and questions about the search warrant. But on the sufficiency of the evidence, I'm really struggling with the notion that you've got any claim at all. There's nobody who surveils the property. There's no testimony that they say we know that Peter Apicelli was actually residing there. He's the person who leased the property. There's no testimony that there was nobody else who visited or stayed there. There was a conclusory statement during trial about how it looked like there was no other room that would have been occupied by an adult. But remember this. They had a paltry amount of identification material relating to Peter Apicelli found in the house. They found, what, a card with his name on it, a piece of mail. What else did they find that said, okay, this is a house where he stayed? He's a student. Could he have been at the State College? He leased the property. That's correct. He had a legal possessory interest in the property. And there are students that have a lease over here and also stay on campus. There are lots of people who own multiple homes. And you made them and the jury obviously didn't buy them. They don't go to the sufficiency. Well, then let's go to the related issue of the, as the government said, the compsognathus, the compi in the room where I suggested it was a tyrannosaurus. I mean, the classical description of this kind of evidence is the elephant going through the room. Thank you. Good morning. Good morning. Seth A. Frank for the United States. The premise of the defendant's argument is a premise that this court has rejected many, many times, which is that the burden is on the government to exclude every possible innocent inference that could be drawn from the evidence. That's not how a trial works. The evidence here was more than sufficient. The brief lays out in detail the ways that the house could be attached to Peter Apicelli, the law that goes a long way to proving that the drugs found in the house belong to him. As Judge Thompson points out, the house was leased to him. Another important fact is that the two cars in the driveway are registered to him. A third fact is that the mail and credit card found in the house were his. A fourth fact is it appeared only one adult male lived in the house, and that the marijuana was hanging on the walls of the house. So that evidence alone is enough for a jury to conclude that it's his house with drugs in plain view and that those are drugs over which he had possession. That's the evidence, and that's sufficient for a jury to convict. Sure, you can say that there was no one who came into the trial and said, that person in the video in the garden was Peter Apicelli, but the jury saw the video itself. It saw the person. It saw Peter Apicelli. It saw he had a red backpack and khaki shorts. It knew that red backpack was found in the kitchen and khaki shorts were found in the bedroom of the adult male. So as far as sufficiency goes, this really isn't even a closed case. As far as the mistrial issues, which Attorney Weaver touched at the end, an officer said that amongst all the marijuana, there was a mushroom grove. That was the entire scope of the testimony. Objection was made. Judge struck the evidence, gave a curative instruction. Mr. Madigan, did anybody testify as to what kind of mushroom we're talking about? No. So we don't even know if they're illegal mushrooms. Yeah. I mean, there's an inference that could be drawn. I'll even assume a purpose of argument today just to give every benefit to the defendant, assume it was an illegal grove. It was such a minor point buried in to so much else. It's just not the kind of thing that under this Court's precedence is the kind of testimony that requires a mistrial, as opposed to what the judge did, which is to provide a curative instruction. And it was a timely, immediate curative instruction to disregard that evidence, that mushrooms have nothing to do with the case. As far as Bain goes, which is the other mistrial argument, the defendant presents the argument to the Court as if a whole bunch of stuff happened at trial that didn't, as if the officer testified, I asked Bain who was in the video, and Bain told me Apicelli. That didn't happen. The jury never heard that Bain made an identification of Apicelli. The only question was, did you talk to Bain? Yes. Next question. So the argument's made by supplying all of this outside information that the defense counsel knew from the discovery, but it's nothing that was presented to the jury. So the jury knows nothing about Mr. Bain, doesn't know he made an identification of the defendant. That argument just doesn't hold together. As to the Speedy Trial Act, the argument is just based on a false premise. I think there's a possibility, as the Hastings case suggests, that rampant discovery violations by the government that forced the defendant to file a series of motions that delay the trial because of the government's misconduct puts the defendant in a difficult position, and maybe in that fact pattern there could be a Speedy Trial Act violation. But the predicate just isn't there. Judge DeCairoco found time and time again there was no discovery violation. And so it just didn't happen. So factually that argument just does not work. If the court doesn't have any further questions, I am satisfied to rely on the brief. Thank you, Judge Dreher. No discovery violations. We had a jury picked. The district court judge said this is a serious problem and I have no alternative. Our position was he did have an alternative. He had the alternative of dismissing the case because even at that point, by our calculations, the Speedy Trial Act had been violated. But certainly the delay from June 8th when after jury selection we had four hours of video or more that needs to be reviewed that actually was very helpful and was good cross-examination material, good material relating to whether or not the video could actually demonstrate anything, to say that that's no discovery violation. Troops and drafts came out. How long was the trial delayed at that point? It was delayed from, I believe, June 8th to the end of July. And I don't know the exact days off the top of my head, but that's on top of other delays previously. Now remember, you've got situations where continuances occurred where sometimes the judge indicated it was ends of justice. But remember, the requirement to make specific findings about the ends of justice were not met. And now if I can go back to the other issue about the violation as to referring to the identification, my brother doesn't mention the fact, he says, oh yeah, and who did you speak with? Robert Bain. But that was almost immediately afterwards, after the answer that was to get the person in the video identified. So the very next thing is talk about Robert Bain, who they, for some serious reason, never called. They never called the person, the only person, who at any time ever said, I think Peter Apicelli may be throwing marijuana. Nobody ever said, I saw Peter Apicelli throwing marijuana. The video was the most important part of it. And of course, we never got a hearing on the multiple motions to suppress at any time. And if, with your Honor's permission, I will rest. Thank you. Thank you.